```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

ACE PARTNERS, LLC d/b/a TC's    :
PAWN COMPANY,                   :
                                :
     Plaintiff,                 :
                                :
V.                              :   CASE NO. 3:09-CV-1282 (RNC)
                                :
TOWN OF EAST HARTFORD; TOWN OF  :
EAST HARTFORD POLICE            :
DEPARTMENT; MARK J. SIROIS;     :
JOHN MURPHY,                    :
                                :
     Defendants.                :
```

## RULING AND ORDER

Plaintiff Ace Partners, LLC d/b/a TC's Pawn Company, brings this action under 42 U.S.C. §§ 1981 and 1983 against the Town of East Hartford, the Town of East Hartford Police Department, its Chief of Police, and its former Deputy Chief seeking damages for alleged violations of its Fourteenth Amendment rights to procedural and substantive due process.  Plaintiff alleges that defendants unlawfully deprived it of the use of its pawnbroker and precious metals licenses when they failed to renew the licenses.  Defendants have moved for summary judgment, and plaintiff has moved for partial summary judgment.  For the reasons that follow, defendants' motion is granted in part and denied in part, and plaintiff's motion is also granted in part and denied in part.

I.  Facts

Plaintiff runs TC's Pawn Company, a pawnbroker and precious metals business.  In October 2007, plaintiff opened an East Hartford location of TC's Pawn Company, and from then until August 9, 2009, it operated under one-year pawnbroker and precious metals licenses issued by Chief Mark J. Sirois of the Town of East Hartford Police Department.  The licenses issued in 2008 were set to expire on August 9, 2009.

In 2009, the Connecticut State's Attorney's Office led an investigation that focused on pawnbrokers in Connecticut suspected of selling stolen merchandise.  As a result of the investigation, on June 2, 2009, the State obtained and executed search warrants at plaintiff's East Hartford location.  Two of plaintiff's employees were arrested on charges of attempt to commit larceny.  Months later, on August 11, plaintiff's general manager Jay Sargent was arrested and charged with attempt to commit larceny.  In 2010, the State agreed not to prosecute TC's Pawn Company or Sargent.

After the June arrests, Sirois learned from then Deputy Chief John Murphy that two of plaintiff's employees had been arrested in connection with the State's investigation, and that a third arrest was forthcoming.  Sirois Dep. 34:14-35:12.  He also knew that the investigation was initiated in response to a concern that stolen goods were being fenced by local pawn shops.

Sirois Dep. 36:1-4. He did not know any other details about the arrests. Several weeks later, on June 30, 2009, Chief Sirois drafted a letter to plaintiff stating that "[r]ecent occurrences at TC's PAWN CO demonstrate that there exists cause to revoke each License." Pl.'s Ex. 9. The letter provided an opportunity for plaintiff to contest the revocation by requesting a hearing. Chief Sirois never sent the letter, however, and plaintiff continued to operate under its pawnbroker and precious metals licenses.

On July 20, 2009, plaintiff applied for renewal of its licenses. Sirois decided not to renew plaintiff's licenses, and he sent a letter on August 7, the Friday before plaintiff's licenses were to expire, saying the licenses would not be renewed. Plaintiff received Sirois's letter denying its application for renewal on Saturday, August 8, 2009. The letter did not provide for a post-deprivation hearing.

Between the June arrests and the August denial, plaintiff's general manager Sargent spoke with officers and administrators at the East Hartford Police Department about the license renewals. He talked with two police officers numerous times, and received assurances that there would be no problem getting the licenses renewed. Pl.'s Supp. Ex. 1 ¶¶ 4-5. After plaintiff applied for renewal, Sargent spoke several times with Donna Lemaire, the records supervisor, who told him that he should not worry, that

she had not heard of problems with the applications, and that nobody wanted to talk to him about the applications. As late as August 7, Lemaire told Sargent the renewals would be taken care of, and Sargent should call the detectives he usually dealt with on Monday and tell them he was still waiting for approval, in order to avoid problems after the license expired. Sargent never spoke with Sirois.

II. Discussion

Plaintiff asserts both procedural and substantive due process claims. It claims that defendants infringed its procedural due process rights by refusing to renew the licenses, thereby depriving it of use of the licenses, without notice or opportunity for a hearing. It also claims that defendants infringed its substantive due process rights by depriving it of the licenses without justification. Defendants move for summary judgment on the ground that plaintiff did not have a property interest in the renewal of its licenses. They also contend that defendant Murphy lacked the personal involvement necessary to be liable for damages under § 1983, that Sirois and Murphy are protected by qualified immunity, and that the claims against the City fail because it had no custom or policy to violate constitutional rights. Plaintiff moves for partial summary judgment on its procedural due process claim.

A. Procedural Due Process

To show a violation of its procedural due process rights, plaintiff needs to show it had a protected property interest in the renewal of its licenses. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985). Plaintiff must have had "more than a unilateral expectation" that its licenses would be renewed to have a property interest; instead, it must have had "a legitimate claim of entitlement" to renewal. Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). Entitlements giving rise to property rights are created not by the Fourteenth Amendment itself but "by existing rules or understandings that stem from an independent source such as state law." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 538 (quoting Bd. of Regents v. Roth, 408 U.S. at 577). Plaintiff may have a property interest if there are "rules or mutually explicit understandings that support [its] claim to entitlement." Perry v. Sindermann, 408 U.S. 593, 601 (1972).

i. The Pawnbroker License

If state law gives a government official discretion to decide whether to grant a benefit, a plaintiff cannot claim an entitlement to that benefit and therefore cannot demonstrate a protected property interest. See Sanitation & Recycling Indus., Inc. v. City of New York, 107 F.3d 985, 995 (2d Cir. 1997); Conde v. Town of Sharon, 421 Fed. Appx. 26, at *1 (2d Cir. 2011).

Section 21-40 of the Connecticut General Statutes, governing the issuance, renewal, and revocation of pawnbroker licenses, gives a chief of police some degree of discretion, in that it requires the chief to issue licenses only to "suitable persons."

The Connecticut Supreme Court, analyzing licensing statutes that use the same language, has found that a licensing official, in determining whether an applicant is suitable, must exercise "judgment and reasoned discretion." Ballas v. Woodin, 231 A.2d 273, 275 (Conn. 1967) (citations omitted). The Court has defined "suitable person" as "a person who is shown to the licensing authority to be suited or adapted to the orderly conduct of a business which the law regards as dangerous to public welfare unless conducted by a carefully selected person duly licensed." Hopson's Appeal, 31 A. 531, 531 (Conn. 1894).

Connecticut courts have applied this line of cases developing the "suitable person" standard to the pawnbroker statute at issue here. See Aurilio v. Sweeney, 1999 WL 171414 (Conn. Super. Ct. Mar. 11, 1999), aff'd 60 Conn. App. 908 (2000) (refusing to issue writ of mandamus ordering chief of police to renew and reinstate plaintiff's licenses). Significantly, the plaintiff in Aurilio sought a renewal of his license, not a new license entirely, and the state court analyzed his renewal claim under the statutory scheme for license issuance.

I conclude that the level of discretion conferred on a chief

of police by the pawnbroker statute precludes a legitimate claim of entitlement. See Sanitation & Recycling Indus., 107 F.3d at 995. In the related context of land use permits, the Second Circuit has held that a license applicant has a property interest if "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 59 (2d Cir. 1985). The "suitable person" determination gives the chief of police enough discretion that a given applicant, such as TC Pawn, cannot be certain that he will be found suitable.

It is true that "[o]nce licenses are issued...their continued possession may become essential in the pursuit of a livelihood." Bell v. Burson, 402 U.S. 535, 539 (1971). However, plaintiff had a one-year pawnbroker license, not an indefinite one. Plaintiff's property right in the license, then, lasted for one year only. A plaintiff may have a property interest in the renewal of a license if mandatory language restricts the reviewing body's discretion. See Thornton v. City of St. Helens, 425 F.3d 1158, 1164 (9th Cir. 2002). But no such language can be found in the pawnbroker statute.

Plaintiff argues that "mutually explicit understandings" created a property interest in renewal of the pawnbroker license, while defendants argue that such understandings cannot create a

property interest when they are contrary to the express provisions of a statute. I agree with the defendants. See Chu v. Schweiker, 690 F.2d 330, 334 (1982); Baden v. Koch, 638 F.2d 486 (2d Cir. 1980). The pawnbroker statute gives discretion to the chief of police and understandings to the contrary do not create a property interest.

To the extent that a promise by a licensing official may create an entitlement to a license, plaintiff has provided no evidence of a promise from Chief Sirois. Sargent spoke with police officers and an administrator about the license, but never spoke to Chief Sirois directly. Plaintiff has not shown that anyone claimed to speak on behalf of the chief. Only Chief Sirois had the discretion to grant the application, and only Chief Sirois's statements could create an entitlement. See Santella v. Chicago, 936 F.2d 328, 332 (7th Cir. 1991)("Promises may have been made to [plaintiff]. They might even have been made by some very influential people. But because they were not made by the only person who counted, they were unauthorized, nonbinding, and without legal effect.").

ii. The Precious Metals License

Connecticut law provides a different standard for the issuance of a license to purchase precious metals. Section 21-100(a) of the Connecticut General Statutes says:

> No person may engage in or carry on the business of purchasing gold or gold-plated ware, silver or silver plated ware, platinum ware, watches, jewelry, precious stones or coins unless that person is licensed by the chief of police

-8-

or, if there is no chief of police, the first selectman of
the municipality in which such person intends to carry on
such business.... The license may be revocable for cause,
which shall include, but not be limited to, failure to
comply with any requirements for licensure specified by the
licensing authority at date of issuance. A chief of police
or first selectman shall refuse to issue a license under
this subsection to a person who has been convicted of a
felony....

Unlike the pawnbroker statute, the precious metals statute does not have any language delineating the chief's discretion. Courts have differed on how to interpret this absence of discretionary language. A judge of the Superior Court has read this language as granting the chief unlimited discretion. See Aurilio, 1999 WL 171414, at *5 ("Section 21-100 contains no criteria for issuing precious metals licenses, but rather relies on the defendant's exercise of discretion."). A judge of this Court has read the section as granting no discretion. See Curcio v. Torres, 2000 WL 1610767, at *3 (D. Conn., Oct. 4, 2000) ("Section 21-40 requires that the holder of a pawnbroker's license must be 'a suitable person,' and the Police Chief has some discretion in issuing or revoking such licenses. With respect to precious metals licenses, the only requirement seems to be that the holder not be a convicted felon and there was no evidence that the plaintiff is a convicted felon."). While federal courts must give "proper regard" to the decisions of lower state courts, we may also consider federal court decisions interpreting state law. Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184 (2d Cir. 2003)(citing Santalucia v. Sebright

Transp., Inc., 232 F.3d 293, 297 (2d Cir. 2000); Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir. 1994); and AXA Marine and Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc., 84 F.3d 622, 626 (2d Cir. 1996)). In this instance, I agree with the decision in Curcio. Section 21-100 charges the chief of police with issuing precious metals licenses. It prohibits him from issuing a license to a felon and it recognizes that he may set "requirements for licensure." If an applicant fulfills those requirements, the chief has no discretion as to whether to issue the license. Because a qualified applicant is entitled to a precious metals license, the applicant has a property interest in the license. See RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 918 (2d Cir. 1989).

Defendant Sirois declined to renew plaintiff's precious metals license even though the applicant was not a felon. Plaintiff was not afforded notice or an opportunity for a hearing of any kind to show that it was qualified. Therefore, plaintiff was denied procedural due process with respect to its application for a precious metals purchasing license, and I grant plaintiff's motion for summary judgment in relevant part.

B.  Substantive Due Process

Plaintiff claims that its right to substantive due process was violated when defendants refused to renew its licenses. The substantive component of the Fourteenth Amendment Due Process Clause protects individual rights against "certain government

-10-

actions regardless of the fairness of the procedures used to implement them." Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)).  To show a substantive due process violation, a plaintiff must first identify the constitutional right and then demonstrate that the state action was constitutionally arbitrary. See Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994).

Plaintiff's substantive due process claim can succeed only if it was deprived of a constitutionally cognizable property interest.  Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995), cert. denied, 519 U.S. 808 (1996).  As discussed above, plaintiff did not possess a property right in the renewal of its pawnbroker license.  Its substantive due process claim with respect to that license therefore fails.

Plaintiff did, however, possess a property right in the renewal of its precious metals license.  To succeed on its claim, then, plaintiff must show that the government's action was "constitutionally arbitrary," in that it was not merely irrational but so egregious as to "shock[] the conscience." O'Connor v. Pierson, 426 F.3d 187, 204 (2d Cir. 2005) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)). "[W]hether executive action shocks the conscience depends on the state of mind of the government actor and the context in which the action was taken."  Id. at 203.  If a defendant acts out of incompetence or confusion, his actions do not "shock the

conscience." Id. at 204. However, if he acts "out of spite, or to keep a plaintiff from exercising a right by whatever means necessary," then the defendant's oppressive actions may be egregious enough to support a substantive due process claim. Garlasco v. Stuart, 602 F. Supp. 2d 396 (D. Conn. 2009) (quoting O'Connor, 426 F.3d at 204). "[C]onduct deliberately intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998).

Plaintiff has not presented evidence that Sirois's decision was constitutionally arbitrary. Plaintiff provides no reason to infer that Sirois's decision was motivated by animus or that he engaged in deliberate disregard of the law. See Silverman v. Barry, 845 F.2d 1072, 1080 (D.C. Cir. 1988). Chief Sirois, under the impression that nonrenewal of a precious metals license did not require a hearing, denied plaintiff a license after he learned of arrests at plaintiff's shop. The precious metals statute mandates that the chief not issue licenses to felons, presumably because the government has an interest in keeping criminals from running precious metals purchasing businesses. While Chief Sirois did not know the details of the arrests, including that they were for misdemeanors, and while the refusal to renew the precious metals license was an impermissible deprivation of property, these mistakes did not result from

"gross abuse of governmental authority." Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999). No jury could reasonably find otherwise. The defendants' motion for summary judgment on both substantive due process claims is therefore granted.

C.  Defendant John Murphy

Defendants argue that former Deputy Chief John Murphy was not personally involved in the decision to not renew the licenses and therefore cannot be held liable under § 1983. Plaintiff does not respond to this argument. I agree with the defendants.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (internal quotation marks omitted). It is also "well-settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." Dove v. Fordham Univ., 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (internal quotation marks omitted). Even now, at the summary judgment stage, plaintiff has not indicated how defendant Murphy's conduct caused plaintiff injury. Murphy told defendant Sirois that there had been arrests at plaintiff's shop, but he did not decide to deny plaintiff's applications. Sirois alone made that decision. Summary judgment

is therefore granted as to all claims against defendant Murphy.

D. Qualified Immunity

Defendants also argue that Chief Sirois's actions are protected by qualified immunity because they did not violate clearly established federal law. Again, plaintiff does not respond to this argument, and again, I agree with the defendants.

Qualified immunity protects a government official carrying out an executive or administrative function from personal liability so long as his actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). While a general right to procedural due process is clearly established, that general right does not defeat qualified immunity. For an official to be held personally liable, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). A right is "clearly established" only if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194 (2001).

It would not have been clear to a reasonable officer that

refusing to renew a precious metals license without a hearing violates an applicant's federal due process rights. A Connecticut trial court had ruled that a police chief has unfettered discretion in issuing precious metals licenses, and an appellate court had affirmed that ruling. See Aurilio v. Sweeney, 1999 WL 171414 (Conn. Super. Ct. Mar. 11, 1999), aff'd 60 Conn. App. 908 (2000). The existence of an unpublished federal court decision to the contrary, Curcio v. Torres, 2000 WL 1610767 (D. Conn., Oct. 4, 2000), did not clearly establish the law. Because the state law was ambiguous when Chief Sirois declined to renew the license, the federal right was not clearly established, and qualified immunity protects Sirois against personal liability under § 1983. Summary judgment is granted in his favor.

E.  Municipal Liability

Defendants argue that plaintiff's claims against the Town of East Hartford must fail because the Town had no unconstitutional custom, policy, or practice that led to plaintiff's injury. Plaintiff responds that Chief Sirois is an authorized policymaker whose actions may be imputed to the Town of East Hartford. Here, I agree with plaintiff that the claim against the Town of East Hartford should survive.

A plaintiff suing a municipality under § 1983 must show that the violation was a result of a municipal custom, policy, or practice. Fitzgerald v. Barnstable School Committee, 555 U.S.

246, 257-58 (2009) (citing Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 694 (1978)). A municipality cannot be held liable for its employees' actions under the doctrine of respondeat superior, Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008); however, a town may be liable for the decision of an authorized policymaker, an individual whose "acts or edicts may fairly be said to represent official policy." Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) (quoting Monell, 436 U.S. at 694).

Chief Sirois's decisions with respect to the issuance, renewal, and revocation of precious metals licenses represented the official policy of the Town of East Hartford. State law determines whether an official is an authorized policymaker for the purpose of municipal liability, City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988), and Section 21-100 of the Connecticut General Statutes puts the chief of police in charge of issuing licenses. Further, all evidence indicates that the Town of East Hartford gave Chief Sirois complete authority over renewal of the licenses. Chief Sirois has testified to the usual process for reviewing license applications, which ends when he reviews available material and makes a decision. Sirois Dep. 22:23-24:6. In his affidavit, Jay Sargent swears that after his application was denied, the Mayor of East Hartford told him that all she could do for him was strongly suggest to Sirois that he meet with Sargent to discuss the renewal. Pl.'s Supp. Ex. 1 ¶¶

12-13. Nobody from the Town of East Hartford or the police department has suggested that any Town policy constrained Sirois's decision-making. Chief Sirois was the Town of East Hartford's authorized policymaker with respect to the issuance, renewal, and revocation of licenses, and therefore his actions are properly attributed to the Town. Defendants' motion for summary judgment on the claims against the Town of East Hartford is denied.[1]

III. Conclusion

Defendants' motion for summary judgment (doc. 35) is hereby granted in part and denied in part. Plaintiff's motion for partial summary judgment (doc. 36) is also hereby granted in part and denied in part. Defendants' motion for summary judgment is granted with respect to plaintiff's procedural and substantive due process claims regarding the pawnbroker license, plaintiff's substantive due process claim regarding the precious metals license, and all claims against John Murphy, Mark Sirois in his individual capacity, and the Town of East Hartford Police Department. Plaintiff's motion for summary judgment is granted with respect to plaintiff's procedural due process claim regarding the precious metals license against Mark Sirois in his

---

[1] The Town of East Hartford Police Department is not an independent legal entity and is therefore not subject to suit under § 1983. See Weaver v. Good, 2008 WL 509452, at *2 (D. Conn., Feb. 4, 2008). The Town of East Hartford is the appropriate named defendant for plaintiff's claims against the police department. Summary judgment is granted as to all claims against the Police Department.

official capacity and the Town of East Hartford.  The matter will be referred to Magistrate Judge Martinez for a hearing on compensatory damages.  No punitive damages may be awarded because municipalities are immune from punitive damage awards under § 1983.  <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981).

    So ordered this 30th day of September, 2011.

/s/ RNC<br>
Robert N. Chatigny<br>
United States District Judge